# PLAINTIFFS CIVIL RIGHTS COMPLAINT

Leon Vessell  #2022742
Polunsky Unit
3872 FM 350 South
Livingston TX 77351
Plaintiff

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT
OF
TEXAS

＊

＊

＊

＊

Civil Action No. 6:17CV 145
RWS/KNM

<u>Defendants</u>

Bryan Collier

Balden Polk

S. Karnes

Brenda Driver

Anitra Lindley

Gwendolyn Myles

Blake Lamb

Patrick Dickens

Taliesin Stern

Joy Runnels

Mrs. Vickers

Deborah Flack

Joshua Perkins

<u>TDCJ</u>
Powledge Unit
Polunsky Unit



IN THE UNITED STATES
DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

Plaintiff                                    *

Leon D. Vessell No. 2022742                  *

                                             *          COMPLAINT

        -V-                                  *

                                             *          CIVIL ACTION No. _____

Defendant                                    *

Bryan Collier - Executive Director TDCJ

P.O. Box #13084  Austin, Texas 78711

Defendants  Powledge Unit 1400

FM 3452 Palestine, Texas 75803


B. Polk —— Warden
S. Karnes — Chief of Classification
B. Driver —— Medical Grievance Investagations
A. Lindley — Senior Medical Practice Manager
G. Myles —— Nurse Practitioner  NP


Defendants   Polunsky Unit 3872

FM 350 S. Livingston, Texas 77351


B. Lamb —— Assistant Warden
P. Dickens —— Unit Major
T. Stern —— Unit Captain
J. Runnels — UCC Case Manager
Ms. Vickers — Medical Records
D. Flack —— CO IV
J. Perkins —— CO IV

# JURISDICTION
## &
## VENUE

1.  This is a Civil Action authorized by 42 U.S.C. Section 1983 to redress the deprivation under color of state law and rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a) (3).  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202.  Plaintiff claims for injunctive relief are authorized by 28 U.S.C. section 2283 and 2284 & Rule 65 of the Federal Rules of Civil Procedure.

2.  The Eastern District of Texas, Tyler Division is an appropriate venue. Under 28 U.S.C. Section 1391 (b) (2) because it is where the original events giving rise to this claim occurred.

## PLAINTIFF

3.  Plaintiff, Leon D. Vessell is and was at all times mentioned herein a Prisoner of the state of Texas in the custody of the Texas Department of Criminal Justice (TDCJ). He is currently confined at the Polunsky Unit in Livingston, Texas.

## DEFENDANTS

4.     Defendant, Bryan Collier is the executive director of TDCJ. He is legally responsible for the overall operations of the department and each institutional division under its jurisdiction, including the Gurney Unit, Powledge Unit, and Polunsky Unit, which are three direct elements in this Claim of Grossly Negligence by Collier.

5.     Defendant, Balden Polk is the warden at Powledge Unit. He is legally responsible for the operation of that Unit and for the welfare of each Inmate on the Unit including Plaintiffs medical needs. Polk is Grossly Negligent by knowingly allowing substandard medical staff to practice at Powledge Unit.

6.     Defendant, S. Karnes is a TDCJ Official who at all times mentioned in this Claim held the position of Chief Of Classification and is/was assigned to the Powledge Unit and is legally responsible for the continuous obligation of assessment and classification of each Inmate. Karnes is a Unit grievance investigator who has free access to Plaintiffs medical records and charts. Karnes is grossly negligent in her knowing of the violation of Plaintiff rights to adequate medical care and failed to do anything to fix the situation.

7.     Defendant, Brenda Driver is a LVN III. TDCJ professional standards and health services division Step 2 medical grievance investigator who at all times mentioned in this Claim is/was assigned to the Region II. Office Palestine, Texas. Driver is legally responsible for investigating Inmates medical grievances that are filed on UTMB CMC Health Care Providers, thus grossly negligent in managing the staff she was supposed to supervise.

③

8.  Defendant, <u>Anitra Lindley</u> is a Senior Practice Manager for the TDCJ correctional managed care (CMC), University of Texas medical branch (UTMB) Providers. Lindley is legally responsible for the management, operations, and quality of care in the people she supervises, and the investigations of medical grievances. Lindley is grossly negligent, deliberately indifferent in creating a custom of allowing and encouraging illegal acts. Lindley is/was at all times mentioned in this Claim held said position at Powledge Unit and Gurney Unit.                                    Exhibits <u>A-E</u>

9.  Defendant, <u>Gwendolyn Myles</u> is a UTMB-CMC provider for TDCJ who at all times mentioned in this Claim held the position of <u>nurse practioner (NP)</u> and is/was assigned to Powledge Unit and Gurney Unit Infirmaries - medical department. Myles is the primary element in this Claim inasmuch as she allowed Plaintiffs serious medical conditions to worsen, causing him unnecessary and wanton infliction of pain, ICU Hospitalization (x4) and irreparable harm.

10.  Defendant, <u>Blake Lamb</u> is the assistant warden of the Polunsky Unit who is legally responsible for the overall operation of that Unit and for the welfare of each Inmate assigned to Polunsky.

11.  Defendant, <u>Patrick Dickens</u> is a ranking officer for TDCJ who at all times mentioned in this Claim has held the rank of Major and is a member of the Unit Classification Committee (UCC) of Polunsky.

12.  Defendant, <u>Taliesin Stern</u> is a TDCJ ranking officer who at all times mentioned in this Claim has held the rank of Captain and is/was a member of UCC at Polunsky.

13.   Defendant, Joy Runnels is a TDCJ Official who at all times mentioned in this Claim held the position of assistant to the Chief of Classification Mr. Mark Duff.   Runnels is legally responsible for adequate housing assignments for Inmates based upon custody level, medical status and factors adopted by TDCJ as administrative directive (AD. 06.17) as policy and the Classification Plan under Texas Government Code §§ 493.001, 493.006 (b), 494.001, 494.002 (a).

14.   Defendant, Mrs. Vickers is the Unit Infirmary UTMB-CMC medical records official who at all times mentioned in this Claim held this position in the medical department. She is legally responsible for forwarding each Inmates Health Summary For Classification (HSM-18) to UCC on Polunsky, which must be superseded when an Inmate is reassigned from another Unit to Polunsky (newly assigned to Polunsky). Vickers is assigned to the Polunsky Unit Infirmary.

15.   Defendant, Deborah Flack is a TDCJ officer who at all times mentioned in this Claim has held the rank of CO IV and is responsible for each Inmate under her assignment. Flack is assigned to Polunsky Unit.

16.   Defendant, Joshua Perkins is a TDCJ officer who at all times mentioned in this Claim has held the rank of CO IV and is responsible for each Inmate under his assignment. Perkins is assigned to the Polunsky Unit.

17.   Each defendant is sued individually and in his/her official capacity. At all times mentioned in this Claim each defendant acted under the color of State Law.

## FACTS

18.  On <u>October 8, 2015</u> Am Plaintiff was being processed into the TDCJ system by and through the Intake Facility, Gurney Unit (ND) and approximately four hours thereafter he began to experience uncontrolable tremors, unsteadiness, nausea, sluggishness, faint, and inflamation of his lower extremities (Legs). These symptoms are the main caricatures of Lithium Toxicity. Plaintiff takes this Mood Stabilizer drug (Lithium 900mg) for treatment of his Bipolar Disorder.                                    Exhibit A I., II.

19.    Subsequently, a corrections officer (CO) noticed Plaintiffs obvious conditions and escorted him to the Unit Infirmary. A nurse questioned Plaintiff in regards to the symptoms and noted such as **doubt**ful and stated she would schedule Plaintiff to see a Provider. The <u>good samaritan Officer</u> insisted that the nurse assign Plaintiff to a Bottom Bunk.

20.    On <u>October 13, 2015</u>  Plaintiff was at last seen by a Provider on Gurney Unit, a Ms. Gwendolyn Myles – NP in regards to his ongoing conditions. Promptly  Myles became rude and dominating as the Plaintiff attempted to explain his most obvious complications and how they could be **connected** to Lithium Toxicity due to his dehydration. When Plaintiff then showed Myles how Inflamed his legs were and the scar tissue from skingrafts (<u>70% lower extremities from 3rd & 4th degree burns</u>) she was Deliberately Indifferent to his serious medical needs, refused to review Plaintiffs previous Medical Records (No. 1587784), and failed to simply **prescribe** him a Diuretic (water pill) to accompany his Cardiovascular (High Blood Pressure) medication.  Exhibit MA & A I.

21. Therefore, Myles not only violated Plaintiffs Eighth Amendment right to adequate medical care but she also neglected to follow TDCJ protocol, Administrative Directives (AD-06.17), and those adopted & authorized by the Texas Government as American Correctional Association Standards (ACA) (4-4362, 4-4363, 4-4363-1, 4-4364, 4-4365, and 4-4366) which are guidelines established to set a fundamental treatment plan for the Plaintiff and without that Initial Establishment it would be very difficult for him to seek medical treatment (due to it appearing one being untruthful to get out of working) on his future assigned Unit.

22. On October 16, 2015 Plaintiff submitted a nurse sick call (NSC) to possibley receive an adequate diagnosis and medication (diuretic) from a different Provider.

23. On October 21, 2015 Plaintiff was infact evaluated by a Nurse regarding his deteriorating conditions that by then included constant bleeding from his Nasal Cavity. The Nurse scheduled an appointment to a Provider for the Plaintiff.   Exhibit A I.

24. On October 26, 2015 Plaintiff filed a Step 1 Medical Grievance at Gurney Unit against Myles and said Nurse due to their direct failure to respond at all to the seriousness of his obvious medical needs that, were so obvious that even ranking Officers and CO's alike gave him extra time to eat in the Chow Hall because his trembling hands would shake almost all food from his spoon. Exhibit A II.

25. Nevertheless, on October 27, 2015 Plaintiff was transferred to the Byrd Unit (DU) 21 FM 247 Huntsville, Texas 77320 before receiving any diagnosis from a Provider on Gurney Unit.

26.     Wherefore,  Plaintiff attempted to gain access to a Provider <u>while at Byrd Unit</u> but the onset of Myles failure to evaluate him had took its expected path as a Physicians Assistant (PA) Joseph Curry  stated that "<u>there is no record about your complaints during your Intake Process</u>". Curry  also declined to review Plaintiffs prior medical records.

27.    On <u>December 29</u>,  Plaintiff was then transferred and assigned to Powledge Unit, a TDCJ Medical Unit with extended medical hours and medically trained staff in the Infirmary to assist him with his <u>chronic physical and pulmonary conditions</u>.

28.    On <u>January 11, 2016</u> Plaintiff was seen by the Unit Chronic Care Provider, Dr. Charles Adams who added a restriction to his HSM-18 and ordered him  Anti-Embolism Stocking's for inflammation of his Legs.

29.    On <u>January 17, 2016</u> Plaintiff submitted a NSC pertaining to his ongoing Conditions but an appointment never materialized.

30.    On <u>January 22, 2016</u> Plaintiff submitted yet another NSC attempting to receive additional assessments for his chronic conditions.

31.    On <u>January 24, 2016</u> Plaintiff received a comprehensive evaluation by Mrs. Wilcox  LVN and was given opportunity to express the nature of his worsened conditions since 10/08/2015 due to deliberate indifference of a Provider (Myles) on Gurney Unit. Wilcox briefly examined Plaintiff, noted his most obvious conditions, and then scheduled him to see a Provider.

32. On February 1, 2016 Plaintiff did receive an appointment to visit Dr. Adams but shortly after his vital signs were taken he was notified that he was rescheduled.

33. On February 3, 2016 Plaintiffs appointment at 11:00 Am to visit Dr. Adams was subsequently rescheduled again.

34. However, on February 4, 2016 Plaintiff received an appointment to see a Provider regarding his obvious medical conditions (observed by Wilcox 01/24/2016). Nevertheless the Provider inevitably turnedout to be NP Myles from Gurney Unit. Myles offered no physical examination, no records review, and resumed her deliberate indifference and only stated that Plaintiff only needed an increase (mg) of his Blood Pressure medication (Lisinopril).

35. On February 24, 2016 Plaintiff yet again received a NSC regarding his request for treatment of inflammation to his lower legs that was continuously worsened to the point of severe tenderness, redness, fever, and pain. Also on the visit Plaintiff expressed to Wilcox how he was now experiencing a collection of blood and phlegm in his nasal cavity as well as urinating blood. Wilcox requested a Urine Specimen for Laboratory Analysis and scheduled Plaintiff to see a Provider.

36. On February 25, 2016 Plaintiff did in fact receive a pass to visit a Provider with expectations of some kind of an adequate diagnosis unto his ongoing medical needs. Consequently, the Provider was NP Myles who performed a (her) first-time substandard examination with Plaintiff fully clothed, listened to his Chest, viewed his nostrils, and stated again that an increase of Blood Pressure medication was ——

⑨

— needed and that she wanted to administer a Colonoscopy. Plaintiff then replied to Myles that again, a Medical Records review (No. 1587784) **could** help diagnose his condition that had now became a serious Bacterial Infection. Unexpectedly, Myles rudely snapped at Plaintiff as she frantically shuffled little yellow sticky-notes on her Desk and stated "I don't have time to review your records — see all the patients I've got". Plaintiff walked out.

37.  Therefore, Plaintiff signed a refusal form to any future visits to NP Myles and notified the reception desk Nurse that there is a clear Pattern of Abuse by Myles direct and repeatedly decline to review his medical records and provide adequate or basic medical care (Oct. 13, 2015 thru Feb. 25, 2016), cruel and unusual punishment.

38.  On March 16, 2016 11:00 Am Plaintiff inadvertently was seen and treated by Dr. Adams for his constant bleeding from his nasal cavity with Silver Nitrate (a chemical corrosive burning process).

39.  On March 23, 2016 Plaintiff received a pass for a follow-up with Dr. Adams. But yet again, after his vital signs were taken he was informed that he was to be seen by Provider Myles. Plaintiff refused this appointment.

40.  On April 3, 2016 Plaintiff was forced to make an unscheduled (walk-in) visit to the Infirmary at 6:30 Pm for treatment. Plaintiff was bleeding profusely from his nose and experiencing dizziness.

41.   On April 4, 2016 11:00 am Plaintiff was seen by Dr. Adams and did receive treatment (silver nitrate) for his nasal cavity as well as medicated lotion (Lubraskin) and pain medication (Ibuprofen 800mg) for his lower extremities that had begun to crack, peel, and bleed due to extreme swelling. Plaintiff's skingrafts on 70 percent of his legs are very thin and unable to withstand this type of pressure without major repercussions.

42.   On April 26, 2016 Plaintiff was issued a Red Dot Shower Pass (a special pass issued to Inmates that have bodily fluids draining). Furthermore, on the same mentioned date, Plaintiff received a pass from S. Karnes and B. Driver regarding an arranged meeting he had with the Step II Medical Grievance's (Three) Investigation Department from Huntsville, Texas who questioned Plaintiff and approximately eleven other Inmates about our grievances filed against NP Myles that pertained to her deliberate indifference and outright negligence towards those in need of medical care.

                                          Exhibits FI.&A,B,C

43.   On May 4, 2016 1:24pm Plaintiff received another Red Dot Shower pass from Dr. Adams.                    Exhibit FII.

44.   On May 20, 2016 Plaintiff was scheduled to visit NP Myles in reference to Dr. Kindal at Beto Unit Brace and Limb for medically assigned Boots. However, Plaintiff explained his situation to Mrs. Jaster RN and Mrs. Carmen and requested to sign a Refusal of any further contact with Myles.

45.   Plaintiff was rescheduled with a NSC for June 4, 2016 at 8:00 Am but at 7:56 Am he was denied access to the Infirmary by the Desk Officer.

46.   Upon information and belief NP Myles was relieved of her medical responsibilities on the Powledge Unit in June 2016 and reassigned back on the Gurney Unit 1385 FM 3328 Palestine, Texas 75803 which is common practice of TDCJ when Administrative Remedies have exposed the actions of a staff member, medical or otherwise.

47.   Due to prolonged inflammation on Plaintiffs legs (Oct. 8, 2015 to Date ) he was/is experiencing poor circulation and infection that advanced rapidly and causing permanen Soft Tissue damage, severe blistering; gangrene, and open infected sore's (up to 1 inch in diameter) with drainage of bloody-pus that became very tender and painful.

48.   Upon the month of July and the 23rd day of 2016 Plaintiffs infection was so bad that a Nightly scheduled appointment of Red Dot Showers and Bandages (Change Dressings by an RN) was required. Exhibits G

49.   On July 31, 2016 Pm Plaintiff became overwhelmed with his serious conditions and was 911 Transported to Palestine, Texas Regional Hospital ICU to receive treatment for a Blood Clot in his (Lt) groin. Twelve days thereafter (08/11/2016) Plaintiff was discharged from the Hospital without any treatment to his infection on his legs, (911 initiated by Mrs. Jaster RN).        Exhibit group    S

50.   On August 12, 2016 7:30 Pm Plaintiff was again 911 Transported to Huntsville, Texas Memorial Hospital for treatment of the Bacterial Infection (Cellulitis) and on 08/14/2016 he went into Surgery, (Patient No. H00001101594).        Exhibit group    R

— A Dr. Demas Abay surgically impanted a catheter (Picc Line) into a main artery of Plaintiff (Lt) bicep in order to allow Medical Professionals to induce a constant drip of Antibiotics. Exhibit  H

51.    On August 19, 2016 Plaintiff was transferred to Beto Unit (B1) Hospital from HMH for a continuation of Intravenous induced 24/7 antibiotics (Clindomycin 900mg - Vancomycin 750mg) and Diuretics (Lasix) under close supervision by Ms. Egan PA, Dr. Kindal PT, Mrs. Pearson RN, Mr. Dailey RN, and Mrs. L.Phillips RN until all open wounds were healed. (Patient No. 2022742 Room #13). Exhibit  H I.

52.    On August 24, 2016 Plaintiff received a Official Notice from the medical department, PA Egan which classified him as Medically Unassigned (unable to work due to his permanent medical injuries) until the year 9999. ( 12/31/9999-Indefinitely).       Exhibit  H II.

53.    On September 6, 2016 Plaintiff was discharged from Beto Unit Hospital and transported by multi-purpose vehicle to Powledge Unit in spite of the fact that his lower extremities were still swollen. Shortly thereafter Plaintiff began to suffer with the inability to walk effectively, severe abdominal pain, uncontrolable diarrhea, lack of appetite, and dehydration. (From 08/24/2016 to 09/06/2016 Plaintiff lost 48 lbs.)

54.    On September 18, 2016 Plaintiff was again 911 Transported to the Palestine, Texas Regional Hospital and admitted into the ICU to receive treatment for bacterial infection that he had contracted in his stomach. (Patient No. 9693158 - Medical Record # 000286969) Exhibit  I

55. On <u>September 22, 2016</u> Plaintiff was abruptly discharged from Palestine Regional Hospital in a wheelchair and transported by TDCJ Powledge Unit Officers in a Wheelchair Van to the Polunsky Unit Infirmary for extended medical treatment of his abdominal bacterial infection. Nonetheless, when Plaintiff arrived on the Unit by and through the Emergency Vehicle access to the Infirmary there was an absence of Medical Staff to adequately admit him as a Patient, (<u>No vital signs, weight taken, No question of medical issues, No examination by a Provider or Nurse</u>).

56. Moreover, from the time Plaintiff departed Palestine, Texas until approximately 6:00 PM he was <u>deprived of Basic Human Needs</u>, not given food, water, medication, and the opportunity to use the restroom.

57. Therefore, Plaintiff was <u>Not</u> assigned to a Hospital-Type room in the Unit Infirmary but subsequently taken in his wheelchair to eleven Building (Disciplinary Housing) and was then ordered out of his wheel-chair by TDCJ Officers and placed in a Pre-Hearing Detention Cell #11 without bedding of any kind and no tissue paper or hygiene items. Upon information and belief since late 2015 the Polunsky Unit Infirmary rooms are specifically designated for Deathrow Inmates. Polunsky is the TDCJ Deathrow Unit. In as much so, Plaintiffs being brought to Polunsky for extended treatment is/was another part of the TDCJ Correctional Managed Care (CMC) Cat and mouse game.

58. On or about <u>September 24, 2016</u> a Dr. James Geddes visited Plaintiff in his cell and examined his stomach and scrotum for knots and then prescribed antibiotics, ointment and lotion for the abdominal infection and skingrafts/cellulitis. Plaintiffs legs was/is inflamed.

Exhibit ___J

(14)

59.   On October 5, 2016 Plaintiff was escorted by Two TDCJ Officers in Handcuffs to 12 Building (Deathrow) to visit Mr. Paul Reilley PA and was then medically released for housing in General Population. Without any further assessment Plaintiff was escorted back to his unwarranted disciplinary cell.

60.   On October 7, 2016 Officer D. Flack approached Plaintiffs Cell and notified him that he was reassignd housing in a Top Bunk and as Plaintiff pointed to his legs (in his boxers) he told Flack that it is physically impossible for him to climb into a Top Bunk, and that he refused the new housing that potentially would cause him even more irreparable harm.                    Exhibits ___K___

61.   On October 10, 2016 Officer D. Flack approached Plaintiffs Cell again and stated two other reassignment for new housing for him and he repied with the statement of his HSM-18 medical restrictions has him restricted to Ground Level - Bottom Bunk since 1993, TDCJ # 721569, 2003 TDCJ #1269990, 2008 TDCJ # 1587784 and 2015 TDCJ #2022742.
Exhibits ___L___

62.   Therefore, on October 12, 2016 Plaintiff was served Two disciplinary cases by B. Vallejo for Refusing New Housing. Exhibits ⌐ K & L

63.   On October 13, 2016 Plaintiff was scheduled for an appointment for a Ultrasound on his Liver (Hep "C") at UTMB Galveston, Texas and on 10/14/2016 8:00 Am he did in fact arrive at the Hospital via medical chain bus. Plaintiff contracted Hep "C" from a blood transfusion after a firey Race Boat crash in 1978 (16 Years old) in which he suffered 3rd & 4th degree burns to 70% of his lower extremities.

64. On October 17, 2016 Plaintiff returned from UTMB and when he exited the chain bus he was briefly interviewed by Brenda O'Neil RN regarding any immediate medical needs. Plaintiff then raised his pants legs to show her that his legs were extremely swollen and purple, then stated to O'Neil "Cellulitis". O'Neil was passive.

65. Plaintiff was escorted to the Administration Building to await Unit assignment by the Unit Classification Committee without any medical assessments by a Physician, or Provider.

66. Wherefore, Plaintiff came before the Committee on 10/17/2016 (assistant warden Lamb, major Dickens, captain Stern, and the case manager II Ms. Runnels). Dickens opened Plaintiffs file and questioned his reason for refusal of housing. Plaintiff again raised his pants legs in order to fully expose his swollen legs and said that it is not possible for him to climb up stairs or into a Top Bunk. Dickens then sarcastically said " what are you showing me, I have legs too " then Lamb asked Plaintiff what his condition was diagnosed as and he told Lamb = Cellulitis. Plaintiff was dismissed with no regards to his obvious conditions and created liability, became grossly negligent and deliberately indifferent.

67. Shortly thereafter Plaintiff was assigned housing to a upper level cell and Top Bunk by the UCC and was to be escorted by Officer Shermen. But Plaintiff refused said housing and explained to the CO that he requested appropriate housing during classification. Officer Shermen then took him to Medical as a Walk-In visit and nurse O'Neil had "NO" recollection of Plaintiffs condition until she seen his legs again as she showed PA Reilley. Plaintiff was given T.E.D. support stockings and dismissed from the Infirmary.

68.   Accordingly, on 10/17/2016 Plaintiff was rehoused in 11 Bldg as officials and medical Providers alike failed to obtain a Copy of or to Supersede his HSM-18 from his prior Assigned Unit - Powledge Unit.
                                                                Exhibit  M I.

69.   On October 19, 2016 Officer J. Perkins approached Plaintiffs Cell in Pre - Hearing Detention, stated he had new housing assignments for him that included a Top Bunk, and he refused said housing and notified Perkins that he was ground level - bottom bunk restricted.                                            Exhibit N I.

70.   On October 21, 2016 Plaintiff was served yet another disciplinary case by Ms. B. Vallejo for refusing housing.        Exhibit N II.

71.   On October 24, 2016 Plaintiff was found guilty of refusing to be housed in conditions that posed a detrimental hazard to his health. without even being present to defend himself at the Hearing. Plaintiff received severe punishment by Captain Stern. Exhibit N III & O, P

72.   On October 25, 2016 Plaintiff was seen by PA Reilley for a pass regarding his walking cane that he has used since the year 1978 and as a result Plaintiff did in fact receive housing with a Bottom Bunk assignment but with a G4 custody status because of the major disciplinary case passed down by Cpt. Stern.

73.   On November 15, 2016 Plaintiff finally was able to see Dr. Geddes concerning his HSM-18 that had not been updated and it came to be a big surprise to Geddes that this had happened as he begun to direct his assistant (Deborah Nwokolo NP) to correct the problem and gave Plaintiff a printout of the superseded HSM-18. Exhibit   Q

# EXHAUSTION OF LEGAL REMEDIES

74. Plaintiff LEON D. VESSELL used the grievance procedure that is available at Gurney Unit to try and solve the problem of deliberate indifference by NP Myles. On 10/26/2015 Plaintiff presented the Facts related to this Complaint. On 04/05/2016 at Powledge Unit Plaintiff was sent a response saying that the grievance had been denied. On 04/16/2016 Plaintiff appealed the denial of the grievance.                     see Exhibit group  A II & III.

75. Plaintiff again used the grievance procedure available at the Powledge Unit with additional problems and facts relating to this Complaint on 02/15/2016. On 03/30/2016 Plaintiff received a response saying that the grievance was denied. On 04/09/2016 Plaintiff appealed the denial of the grievance.  Exhibit group B & BI.

76. On 03/06/2016 Plaintiff used the grievance procedure that is available at Powledge Unit to solve a compilation of problems that are directly related to facts about his deteriorating health since he came through the Intake Unit (Gurney) on October 8, 2015 and point out many violations by nurse practitioner Gwendolyn Myles. On 04/03/2016 Plaintiff was sent a response saying that the grievance had been denied, and then on 04/12/2016 he appealed the denial of the grievance that relates to this Complaint.     Exhibit group  C & C I.

77. On 10/24/2016 Plaintiff used the grievance procedure available on the Polunsky Unit to try and solve the problems of medical and UCC failing to adhere to Administrative Directives and all facts related to this Complaint and on 12/21/2016 his grievance was denied. Plaintiff then appealed on 12/27/2016 but his grievance was returned with **no reply.**
                                                    Exhibit group  D – E

# LEGAL CLAIMS

78. Plaintiff realleges and incorporates by reference paragraphs 1 thru 77

79. The Deliberate Indifference to serious and obvious medical needs, Grossly Negligent Supervisors and Administraitive Officials did in fact cause Imminent Injury and Irreparable Harm which violated Plaintiffs rights and constituted cruel and unusual punishment, due process of law, and illegal search and seizure a violation under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

80. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrong described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the said defendants unless this court grants the declaratory and injunctive relief which Plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting plaintiffs:

81.   A declaration that the acts and omissions described herein violates Plaintiffs rights under the Constitution and laws of the United States.

82.   A preliminary and permonent injunction ordering defendants (Bryan Collier, Balden Polk, S. Karnes, Brenda Driver, Anitra Lindley, Gwendolyn Myles, Blake Lamb, Patrick Dickens, Taliesin Stern, Joy Runnels, Mrs. Vickers, Deborah Flack, and Joshua Perkins) to refrain from retaliation of any nature towards the Plaintiff, provide adequate Medical Care for Plaintiff as to stop his ongoing infection, assign to a legitimate Single level Medical Unit that offers special housing with Like Medical Conditions, supply Plaintiff with appropriate orthopedic (medicall assigned) footwear, Terminate NP Myles, Reprimand those that are grossly negligent, and Restore all line class and custody levels wrongly taken from Plaintiff, that includes a loss of 60 days good time.

83.   Compensatory damages in the amount of $550,000.00 against each each defendant, jointly and severally.

84.   Punitive damages in the amount of $2400.00 against each defendant.

85.   A Jury Trial on all issues triable by jury.
86.   Plaintiffs costs in this suit.
87.   Any additional relief this Court deems just, proper, and equitable.

## VERIFICATION

Plaintiff, Leon D. Vessell has read the foregoing Complaint and hereby verifies that the matters alleged herein are true, except as to matters alleged on information and belief, and to those I believe them to be true. I hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_Leon D. Vessell_
Respectfully Submitted

Leon D. Vessell # 2022742
Polunsky Unit   TL
3872 FM 350 South
Livingston, Texas 77351

_____
Honorable  Judge

_____
Date

Executed in Livingston, Texas  on  February 28, 2017

X _Leon D. Vessell_
PlaintiFFs Signature