IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LEON D. VESSELL, #2022742 | § | |
| VS. | § | CIVIL ACTION NO. 6:17cv145 |
| BRYAN COLLIER, ET AL. | § | |

## ORDER OF DISMISSAL

Plaintiff Leon D. Vessell, an inmate confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, brings the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The sole remaining defendant is Nurse Practitioner Gwendolyn Myles. The complaint was referred to United States Magistrate Judge K. Nicole Mitchell, who issued a Report and Recommendation ("R&R") (Dkt. #53) concluding that Ms. Myles' motion for summary judgment (Dkt. #46) should be granted. Mr. Vessell has filed objections. (Dkt. #56). After conducting a *de novo* review of the record, the pleadings, and the paper on file, the court concludes that the R&R is correct and that the objections lack merit.

### Plaintiff's Factual Allegations

Mr. Vessell alleges that starting on October 13, 2015, Ms. Myles failed to provide him medical care for early stages of edema to his lower extremities. He adds that she refused to review his prior medical records, including a Correctional Managed Care Intake History and Health Screening form ("HSM-13"). She likewise failed to update his medical records to include the form, which greatly reduced his ability to receive medical treatment.

1

Mr. Vessell states that he was reassigned to the Powledge Unit, and Ms. Myles was a medical provider at that unit as well. He alleges that she repeatedly continued to be deliberately indifferent to his serious condition; instead, she only offered him an increase in blood pressure medication and a colonoscopy - which were not related to his edema or cellulitis.

Mr. Vessell notes that he started grievance procedures. On April 26, 2016, he and other inmates were interviewed regarding Ms. Myles' deliberate indifference. He asserts that Ms. Myles was terminated shortly thereafter. He subsequently received a course of treatment that included antibiotics, bandage changes and hospitalizations. He once feared that death would have come or amputation. In his first amended complaint (Dkt. #12), he asked for $550,000 in compensatory damages and $240,000 in punitive damages. In his second amended complaint (Dkt. #34), he does not specify the amount of money he is seeking in damages.

### Ms. Myles' Motion for Summary Judgment

Ms. Myles filed a motion for summary judgment (Dkt. #46) on October 27, 2017. In support of the motion, she attaches a copy of Mr. Vessell's medical records and an expert report provided by Dr. Steven Bowers. Ms. Myles argues that the competent summary judgment evidence does not support a claim of deliberate indifference and that she is entitled to qualified immunity and Eleventh Amendment immunity.

Dr. Bowers provides an affidavit containing a thorough discussion concerning Mr. Vessell's medical records in his report. His discussion includes the following:

> I have been asked to review the above referred records in order to provide an expert medical opinion(s) as to the medical care provided to Leon Vessell by Gwendolyn

2

Myles, nurse practitioner (NP). Plaintiff claims NP Myles deprived him of medical services for his early stages of leg edema; failed to update his medical records to include the HSN-13, which reduced his ability to receive medical treatment in the future; increased his blood pressure medication, and ordered a colonoscopy which was not related to the edema in his legs.

Medical Review:

I have reviewed Mr. Vessell's medical record and more specifically his encounters with NP Myles. Mr. Vessell entered the Texas Department of Criminal Justice (TDCJ) on October 8, 2015 through TDCJ's Gurney Unit located in Palestine, Texas. During Mr. Vessell's intake processing, a HSM-13-Correctional Managed Care Intake History and Health Screening form was completed. This form is completed pursuant to Correctional Managed Health Care Policy E-32.1, Receiving,Transfer and Continuity of Care Screening. The HSM-13 form is completed during the intake process and contains information provided by the patient and provides information relating to the patient's family medical history, personal medical history, infectious disease history, behavior and mental status, and thought content. The HSM-13 form is only completed during an inmate intake processing into TDCJ.

Subsequent transfers to other TDCJ units utilize a different screening form. The completed HSM-13 form was placed in Mr. Vessell's medical record for reference. Updates are not required of the HSM-13 form because a comprehensive medical evaluation is completed on all new incoming offenders within seven days of their arrival in the system. Mr. Vessell's comprehensive medical evaluation was performed on October 13, 2015 by NP Myles. This clinical evaluation included evaluation of the patient's head and neck, eyes, ENT (ears, nose and throat), dental, chest/breast, cardiovascular, hemopoietic/lymphatic, abdomen, gastrointestinal, endocrine/metabolic, nutritional, upper and lower extremities, spine, skin, rectal, genitourinary, neuro and psych. NP Myles noted that Mr. Vessell's lower extremities had full range of motion, were symmetrical in strength, and had no edema (swelling). NP Myles also noted the patient had previously been diagnosed with hypertension, Hepatitis C, and bipolar disorder. NP Myles ordered housing and work restrictions on the Health Summary for Classification form (HSM-18), a Chronic Care Clinic visit for his hypertension and Hepatitis C in 30 days, and various laboratory tests.

On October 17, 2015, Mr. Vessell was seen in the Contagious/Infectious Disease clinic. It was noted that the patient had a history of a positive PPD test (skin test for tuberculosis (TB)) in 2012 and had previously taken medication. NP Myles

was informed of this information and ordered a chest X-ray. X-rays results dated October 21, 2015 did not reveal any signs that Vessell had TB.

On November 23, 2015, Mr. Vessell was seen in the Chronic Care clinic by physician assistant (PA) Joseph Curry. During that visit PA Curry noted the patient had no clubbing, cyanosis or edema in his extremities.

On January 5, 2016, NP Myles ordered Vessell Engerix-B (Hepatitis B vaccine). On January 8, 2016 NP Myles ordered additional laboratory testing and the results were reviewed on January 13, 2016.

On January 11, 2016, Mr. Vessell was seen by Dr. Charles Adams for complaints of lower extremity swelling. Dr. Adams noted the patient had 1+ pitting edema and ordered TED stockings for one year and a sedentary work restriction.

On February 5, 2016, NP Myles examined Mr. Vessell for complaints of headaches, bleeding nostrils, and productive cough with green phlegm. The patient's vital signs were taken and it was noted that his blood pressure was high at 160/80 and all other vital sign (pulse, respiration, temp.) readings were within normal limits. The examination findings showed the patient had a regular heart rate and rhythm, his lungs were clear on both sides, and his nostrils had bright red blood with no clotting noted and no lesions to nose. Mr. Vessell was assessed with uncontrolled hypertension, allergies and obesity (BMI-31). The plan of care was an order for nasal spray with instructions for saline nose drops, blood pressure check weekly for two weeks, take two Prinivil (Lisinopril) until new pill pack is received, and an order to increase Lisinopril from 10mg to 20mg daily.

On February 23, 2016, Mr. Vessell was seen in nursing sick call for complaints of passing blood in his urine. An examination and urinalysis was performed by the sick call nurse and NP Myles was contacted and informed of the patient's complaints and the abnormal findings. NP Myles gave orders for a urine culture and Amoxicillin 500mg (antibiotic) twice daily for seven days.

On February 25, 2016, Mr. Vessell saw NP Myles for a physical exam. The record notes the patient had no complaints, a past medical history of Hepatitis C, hypertension, and asthma. The physical examination findings were all normal except for a high blood pressure reading of 172/92, and petite (slight) edema and hypopigmentation (loss of skin color) were noted in the patient's lower extremities. NP Myles counselled the patient on avoiding salt and junk foods and noted that the patient refused to change his blood pressure medication. These treatment recommendations by NP Myles are part of the standard treatment for hypertension

4

and extremity swelling. The medical record shows the patient was currently prescribed the following medication for the hypertension issues:

- Amlodipine 10mg 1 tablet daily
- Lisinopril 20mg 1 tablet daily

On March 11, 2016, Mr. Vessell refused his scheduled appointment with NP Myles for complaints of pain increase with swelling of feet and legs, and nose bleeds.

On March 23, 2016, Mr. Vessell refused his scheduled appointment with NP Myles for complaints swelling of lower extremities.

On April 28, 2016, Mr. Vessell refused his scheduled appointment with NP Myles for a follow up visit for evaluation of epistaxis (nose bleed) and legs.

On May 18, 2016, Mr. Vessell was a no show for his scheduled appointment with NP Myles for complaints of right leg and ankle pain, and a request for new medical boots.

On May 20, 2016, Mr. Vessell refused his scheduled appointment with NP Myles for complaints of right leg and ankle pain, and a request for new medical boots. Based on my review of Mr. Vessell's medical record, NP Myles had no further involvement in Mr. Vessel's medical care.

In summary, Mr. Vessell alleges that NP Myles deprived him of medical services for his early stages of leg edema. The record shows that Mr. Vessel was examined on October 13, 2015 and no complaints were voiced by the patient and NP Myles noted no swelling in his lower extremities. It should also be noted that PA Curry examined Mr. Vessell on November 23, 2015 and he also noted no lower extremity swelling. My review shows that the first time Mr. Vessell informed NP Myles that he had leg swelling was on February 23, 2016. NP Myles' plan of care of to counsel the patient on the importance of avoiding salt and junk food. NP Myles also wanted to increase Mr. Vessell's blood pressure medication but the patient refused. Thereafter, Mr. Vessell either refused or was a no show for all appointments scheduled with NP Myles.

Mr. Vessell alleges that NP Myles failed to update his medical records to include his HSM-13, which reduced his ability to receive medical treatment in the future. As noted above, HSM-13 forms are only completed during the intake process and no updates are required. Mr. Vessell has been followed in the Chronic Care Clinic and seen multiple times in the clinic by multiple medical providers.

> There is nothing in the medical record indicating NP Myles ever ordered a colonscopy for Mr. Vessell.
>
> Based upon my education, training, and experience as a physician both in the community and correctional settings, I believe that the medical treatment/care provided to Mr. Vessell by NP Miles was both appropriate and performed within the proper standard of care. I believe any other reasonably well-trained nurse practitioner, under the same or similar circumstances and knowing what the defendant knew at the time, would have provided the same treatment/care and believed that doing so was responsible and done in good faith.

*See* Motion for Summary Judgment, Exhibit B, pages 3-6 (footnotes omitted). Dr. Bowers' summary is consistent with the Court's own independent review of the medical records (Exhibit A).

### Mr. Vessell's Response

Mr. Vessell filed a response addressing Ms. Myles' legal arguments. He initially discussed the affirmative defense of failure to exhaust administrative remedies, but Ms. Myles does not raise this defense in her motion. He goes on to assert that the records support his claim of deliberate indifference in that she repeatedly refused to treat him, ignored his complaints, intentionally treated him incorrectly and engaged in similar conduct. He asserts that he has a documented history of high blood pressure, Hepatitis-C, immune deficiency, COPD, severe scarring to 70% of his lower extremities, and lower back problems with chronic pain. He again asserts that Ms. Myles was deliberately indifferent to his serious medical needs. He specifically focuses on October 13, 2015, when she purportedly refused to treat him and ignored his complaints even after she observed his lower extremities.

## Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient

to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011).

## Discussion

### 1. Deliberate Indifference to Serious Medical Needs

Mr. Vessell is suing Ms. Myles for being deliberately indifferent to his serious medical needs. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino*, 239 F.3d at 756. The competent summary judgment evidence must support a claim of deliberate indifference in order for Mr. Vessell to continue with his claims.

Mr. Vessell initially focuses on October 13, 2015. The record (Defendant's Exhibit A, pages 151-54) reveals that Ms. Myles conducted a comprehensive medical evaluation at that time, which included an evaluation of the patient's head and neck, eyes, ENT (ears, nose and throat), dental, chest/breast, cardiovascular, hemopoietic/lymphatic, abdomen, gastrointestinal, endocrine/metabolic, nutritional, upper and lower extremities, spine, skin, rectal, genitourinary, neuro and psych. Ms. Myles noted that Mr. Vessell's lower extremities had full range of motion, were symmetrical in strength, and had no edema (swelling). Ms. Myles also noted the patient had previously been diagnosed with hypertension, Hepatitis C, and bipolar disorder. Ms. Myles ordered housing and work restrictions on the Health Summary for Classification form (HSM-18), a Chronic Care Clinic visit for his hypertension and Hepatitis C in 30 days, and various laboratory tests. Pursuant to Ms. Myles' referral, Mr. Vessell was seen at the Contagious Infectious Disease clinic on October 17, 2015. Also pursuant to Ms. Myles' referral, Mr. Vessell was examined at

the Chronic Care Clinic in November 2015. Certified Physician Assistant Joseph Curry noted there was no clubbing, cyanosis, or edema in his extremities. He concluded that there was no indication for TED hose, medical shoes, lotion or facility transfer at that time. He referred Mr. Vessell to Hospital Galveston Hepatology for evaluation.

In his objections, Mr. Vessell discusses an examination by RN S. Fields and LVN Milton on October 21, 2015. He refers to pages in the medical records, but he did not submit them with his objections and they are not included in the record before the court. He complains that Dr. Bowers did not discuss their entries, but the motion for summary judgment concerns Ms. Myles' actions, as opposed to actions by other members of the medical staff.

The competent summary judgment evidence submitted to the court reveals that Ms. Myles did not ignore Mr. Vessell on October 13, 2015. She made findings in accordance with her examination and issued appropriate referrals. Mr. Vessell's disagreement with her medical conclusions is insufficient to establish a constitutional violation. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007). *See also Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls [and] examinations . . . may rebut . . . allegations of deliberate indifference.").

Mr. Vessell also complains in his objections that Dr. Bowers failed to discuss a medical entry on January 1, 2016 by LVN Wilcox and RN Jester. Once again, however, the motion for summary judgment concerns Ms. Myles' actions, as opposed to actions by other members of the medical staff.

Mr. Vessell also complains in his objections that Dr. Bowers failed to discuss a medical entry on January 9, 2016 by LVN Betts and RN Shofner. Once again, the motion for summary judgment concerns Ms. Myles' actions and whether her actions support an inference of deliberate indifference.

Mr. Vessell also complains in his complaint about Ms. Myles' actions on February 5, 2016. He asserts that she did not examine him, that she refused to review his medical records and that she did nothing more than to offer to increase his blood pressure medication. The competent summary judgment evidence (Defendant's Exhibit A, pages 98-99) reveals that Ms. Myles examined Mr. Vessell for complaints of headaches, bleeding nostrils, and productive cough with green phlegm. His vital signs were taken and it was noted that his blood pressure was high at 160/80 and all other vital sign (pulse, respiration, temp.) readings were within normal limits. The examination findings showed the patient had a regular heart rate and rhythm, his lungs were clear on both sides, and his nostrils had bright red blood with no clotting noted and no lesions to nose. Mr. Vessell was assessed with uncontrolled hypertension, allergies and obesity (BMI-31). The plan of care was an order for nasal spray with instructions for saline nose drops, blood pressure check weekly for two weeks, take two Prinivil (Lisinopril) until new pill pack is received, and an order to increase Lisinopril from 10mg to 20 mg daily. Once again, the competent summary judgment evidence does not support an inference of deliberate indifference.

Mr. Vessell also complains in his objections that Dr. Bowers failed to discuss a medical entry on February 23, 2016 by LVN Wilcox and RN Jaster. Once again, the motion for summary judgment concerns Ms. Myles' actions and whether her actions support an inference of deliberate

11

indifference. There was no need for Dr. Bowers to discuss the actions of other members of the medical staff on February 23, 2016.

Mr. Vessell asserts in his complaint that Ms. Myles performed another substandard examination on February 25, 2016. He states that she increased his blood pressure medication again and refused to review his records even though his legs remained severely inflamed and he had dried blood in his nostrils. The competent summary judgment evidence (Defendant's Exhibit A, pages 58-60) reveals that Ms. Myles conducted a physical exam. The record notes he had no complaints, a past medical history of Hepatitis C, hypertension, and asthma. The physical examination findings were all normal except for a high blood pressure reading of 172/92, and petite (slight) edema and hypopigmentation (loss of skin color) were noted in the patient's lower extremities. Ms. Myles counseled the patient on avoiding salt and junk foods and noted that the patient refused to change his blood pressure medication. These treatment recommendations by Ms. Myles are part of the standard treatment for hypertension and extremity swelling. The medical record shows the patient was currently prescribed the following medication for the hypertension issues:

- Amlodipine 10mb 1 tablet daily
- Lisinopril 20mg 1 tablet daily

Dr. Bowers observed that Mr. Vessell refused or was a no show for all subsequent appointments with Ms. Myles; nonetheless, Ms. Myles' actions when she saw Mr. Vessell were both appropriate and within the proper standard of care. Once again, the competent summary judgment evidence does not support an inference of deliberate indifference.

Apart from Ms. Myles' care, the record further reveals that Mr. Vessell was seen by a doctor during this period of time for complaints about lower extremity swelling on January 11, 2016. Dr. Adams observed that Mr. Vessell had a 1+ pitting edema and ordered TED stockings for one year and a sedentary work restriction. Dr. Adams saw Mr. Vessell again on May 4, 2016 and May 23, 2016. Dr. Adams prescribed body lotions to apply each evening to the legs to affected areas of skin grafts, sulfamethoxazole, and Lisinopril. To the extent that medical care may have been delayed by Ms. Myles' actions, Mr. Vessell still received care from a doctor. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Mr. Vessell has shown neither.

Overall, the competent summary judgment evidence reveals that Ms. Myles was responsive to Mr. Vessell's condition and provided medical care as she deemed appropriate. Her actions were reviewed and supported by a physicians assistant and a physician. The thrust of his claim is that Ms. Myles' care was inadequate; however, claims about inadequate medical care do not amount to a violation of federal rights. *See Estelle*, 429 U.S. at 107; *Jackson*, 864 F.2d at 1244; *Johnson*, 759 F.2d at 1238. Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle*, 429 U.S. at 106; *Johnson*, 759 F.2d at 1238.

The competent summary judgment evidence does not support a claim of deliberate indifference.

## 2. Qualified Immunity

Ms. Myles next argues that she is entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S, 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The test for qualified immunity "is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of clearly established law at the time of the incident." *Domino*, 239 F.3d at 755. A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the present case, Mr. Vessell has not shown that Ms. Myles violated a clearly established constitutional right; thus, she is entitled to summary judgment based on qualified immunity for

that reason alone. His response to the motion for summary judgment does not address or show that her actions were objectively unreasonable in light of clearly established law. He has not submitted any competent summary judgment evidence overcoming the defense of qualified immunity. In his objections, Mr. Vessell failed to show that Ms. Myles is not entitled to summary judgment based on qualified immunity. He says nothing more than he objects to qualified immunity. Ms. Myles is entitled to summary judgment based on the defense.

      3.      <u>Eleventh Amendment Immunity</u>

Ms. Myles finally argues that she is entitled to Eleventh Amendment immunity to the extent that Mr. Vessell asserts claims against her in her official capacity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits in law and equity against a non-consenting state, or a state agency, by its own citizens. *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007). Furthermore, for purposes of civil rights litigation, the Supreme Court has held that neither a State nor a state official acting in his official capacity is a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Fifth Circuit has made it clear that the "Eleventh Amendment bars recovering § 1983 money from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Mr. Vessell failed to discuss Eleventh Amendment immunity in either his response to the motion or his objections. Ms. Myles' motion for summary judgment should be granted to the extent that Mr. Vessell is suing her in her official capacity for compensatory and punitive damages.

Conclusion

The Report of the Magistrate Judge, which contains her proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration, and having made a *de novo* review of the objections raised by Mr. Vessell to the Report, the court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and Mr. Vessell's objections are without merit. Therefore, the court adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the court. It is accordingly

**ORDERED** that Defendants Myles motion for summary judgment (Dkt. #46) is **GRANTED** and the case is **DISMISSED** with prejudice. All motions not previously ruled on are **DENIED**.

**So Ordered and Signed**
**Jun 1, 2018**

_____
Ron Clark, United States District Judge